**MURRAY & SABBAN, LLP**
Lomas Santa Fe Professional Building
140 Marine View Avenue, Suite 116
Solana Beach, CA 92075
Telephone (858) 259-8052
Telecopier (858) 259-8055
pmurray@murrayandsabban.com
Paul S. Murray, SB# 158280
Ariel J. Sabban, SB# 189414

Attorneys for Plaintiff LSO, LTD.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LSO, LTD. a California Corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>DONALD D. HUGHES; RIGHT CONNECTION, INC., a Nevada corporation; and DOES 1 through 20 inclusive,<br><br>          Defendants. | Civil Action No.:   3:08-cv-00329 H (LSP)<br>Judge:  Hon. Marilyn L. Huff<br>Courtroom 13<br><br>**PLAINTIFF LSO LTD.'S OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION TO CONTINUE MARCH 17, 2008 HEARING ON TEMPORARY RESTRAINING ORDER, WRIT OF POSSESSION AND MOTION FOR PRELIMINARY INJUNCTION** |

   PLAINTIFF LSO, LTD. (hereinafter "LSO") respectfully submits the following Opposition to Defendants DONALD D. HUGHES ("HUGHES") and RIGHT CONNECTION, INC.'s ("RCI") (collectively the "Defendants") *ex parte* application to continue the March 17, 2008, hearing on LSO's requests for a Temporary Restraining Order ("TRO"), Writ of Possession, and Preliminary Injunction (sometimes referred to as the "Hearing").

   The *ex parte* request should be denied and the Defendants should be ordered to file and serve their opposition papers immediately so as to allow LSO adequate time to draft a reply. First and foremost, Defendants are taking steps to tamper with evidence and change the factual basis underlying this lawsuit. Moreover, Defendants have not shown that emergency relief in the form of continuing the Hearing is necessary. Notably, Defendants' Application is not supported by any affidavits or competent evidence.

## I.

## INTRODUCTION

Rather than immediately retaining an attorney to begin reviewing and responding to LSO's papers, Defendants have engaged in acts to tamper with the factual basis of the lawsuit by destroying evidence.  The facts reveal that: Defendants have had adequate time to draft a response to the Combined Motion; that the Defendants are destroying evidence; that Defendants' counsel has presented false information that the website www.clublifestyle.com is "non-operative (Defendants' Application page 4:10-12); and that without proper investigation or reasonable basis have attempted to impugn the integrity of LSO's Counsel Mr. Paul Murray and his wife in the eyes of the Court through the informal *ex parte* procedure.  (Defendants' Application page 5:27 to 6:4)  The Application was improperly brought and should not be accepted as a substitute for the opposition papers that was due to the Court on March 6.

## II.

## DEFENDANTS HAVE HAD ADEQUATE NOTICE OF THE TRO AS REVEALED BY HUGHES OWN STATEMENTS MADE PRIOR TO SERVICE OF THE COMPLAINT

On February 20, 2008, Counsel for LSO gave telephonic notice directly to HUGHES (and through him RCI) of LSO's intent to seek injunctive relief on the morning of February 21, 2008.  Attorney Darwin Bustarde specifically told HUGHES that the matter regarded allegations that Defendants were infringing on LSO's trademarks, among other things.  HUGHES was notified that Counsel for LSO would file the case initiating papers between 9:00 a.m. to 9:30 a.m., and that thereafter Counsel would proceed directly to the assigned Courtroom to request a TRO pending a hearing on the requested preliminary injunction.  (See the filed Certificate of Counsel Regarding Efforts to Notify Defendants of LSO, LTD.'s Application for Temporary Restraining Order)

At about 9:20 a.m. on the 21st, Attorney Mark Osman of the Osman law firm telephoned Attorney Bustarde.  Mr. Osman stated that he was at the Federal Courthouse and was looking for the Courtroom where the TRO was being heard.  Mr. Bustarde informed Mr. Osman that Mr. Murray was at Department 9.  Mr. Osman inquired of the specifics of the lawsuit and was

1  informed that he could obtain copies of the Complaint and Combined Motion from Mr. Murray
2  at the Courthouse. (Declaration of Darwin L. Bustarde)  After the hearing on February 21 Mr.
3  Osman telephoned Attorney for LSO Anahita Nahavandian and requested copies of the filed
4  case initiating documents. (Declaration of Anahita Nahavandian)  Ms. Nahavandian replied
5  inquired whether he would accept service and stated that LSO was concerned that providing the
6  papers to Defendants would prematurely risk the destruction of evidence by Defendants. (Dec.
7  of Nahavandian)  From at least February 20, 2008, Defendants knew that this matter had been
8  initiated and could have obtained copies of the documents directly from counsel or at least
9  obtained the documents from the EC/EMF filing system.
10         Process servers on behalf of LSO then attempted to serve Defendants at two addresses
11  known to be associated with the Defendants in San Diego, specifically 8690 Aero Dr. #312, San
12  Diego and 5694 Mission Center Rd., Apt. 497, San Diego. Those attempts failed and LSO
13  retained a process server who personally served RCI and HUGHES' agent- Mr. Steven Flacks.
14  The filed Proof of Service for Plaintiff's case initiating documents reveal that Mr. Steven R.
15  Flacks is the Resident Agent for RIGHT CONNECTION, INC in Nevada. (See **Exhibit 1**
16  Nevada Secretary of State Entity Details print off of Right Connection, Inc. downloaded
17  February 7, 2008)  Service upon this agent is specifically allowed by Federal Rule of Civil
18  Procedure ("FRCP") Rule 4.
19         Thereafter, prior to the February 29, 2008 service, on February 26, 2008, HUGHES
20  emailed Mr. Murray directly. (**Exhibit 2** copy of  February 26, 2008 email)  In the email he
21  describes his understanding of a pending litigation "regarding Lifestyles concerning the two
22  servers they abandoned". *Significantly, neither Mr. Murray nor Mr. Bustarde told anyone*
23  *associated with Defendants that the lawsuit regarded in part two of LSO's computer servers*.
24  The only discussion of the servers that was available to Defendants are contained in the filed
25  Complaint and Combined Motion. HUGHES volunteered his knowledge of the issue regarding
26  the servers and stated in his email that he is prepared to return those servers. In response to the
27  email Mr. Murray offered to have someone meet him to deliver the papers, however no
28  response was received to that reply email. (Declaration of Paul Murray)

LSO'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE THE HEARING; Case No.3-08-CV-00329 H LSP:

This email further demonstrates that Defendants' assertion that they did not have access to the Combined Motion to prepare an adequate opposition is untrue.

### III.

### **DEFENDANTS ARE DESTROYING EVIDENCE**

The Court should weigh the claim that the hearing should be continued forty two (42) days against the fact that during the thirteen (13) day period between the date HUGHES was notified of the TRO and the date opposition papers was due the Defendants have began destroying and tampering with evidence.

Please note the exhibit attached to the Complaint as "Exhibit 2", which are screen captures of websites, and paragraphs 24 and 25 of the Complaint which explain that Defendants are redirecting web traffic to its own websites by linking its websites to images containing LSO trademarks. The page containing the link with LSO's Trademark superimposed a picture of a woman is identified as "Exhibit 2" to the Complaint, and the webpage that the link *previously* connected to is identified as "Exhibit 3" to the Complaint. Again after Plaintiff's counsel gave notice of the request for a TRO the Defendants modified their website so that the link is now dead. (**Exhibit 3** a true and correct copy of the resultant "error" page after clicking on the link provided as "Exhibit 2" to the Complaint downloaded and printed on February 28, 2008; a courtesy copy of the webpages)

Moreover, as alleged in the subject Combined Motion RCI's website Partycouples.com, improperly affiliates itself with Plaintiff and its Trademarks. Please see "Exhibit 9" to the Complaint exhibits page 17 under paragraph 6.1 which references LSO's "Lifestyles Organization" and the LSO website Clublifestyle.com. Now, going to that same webpage containing the rules one will notice that the reference to "Lifestyles Organization" has been deleted. (**Exhibit 4** a true and correct copy of the Partycouples Rules, http://www.partycouples.com/join/rules.php downloaded February 28, 2008.) Note too that on the last page of the rules paragraph 9.1 has been changed to read that "This User Agreement has been made in and shall be enforced in accordance with *Nevada law*[,] [a]ny action to enforce this agreement shall be brought in the federal or state court in California." (Emphasis added)

1  (**Exhibit 4** exhibit page 11)  Previously, the rules specified that the agreement would be
2  "enforced in accordance with California law."  (See the Complaint "Exhibit 9 exhibit page 18)
3  Defendants are changing the websites in direct response to the facts raised in LSO's Complaint
4  and Combined Motion.
5       It is a fact that Defendants are destroying evidence in *direct response* to the specific
6  allegations of LSO's Complaint and Combined Motion.  This is proven when one examines
7  **Exhibit 5** which is a download of "Clublifestyles Rules" from Defendants' webpage
8  http://www.clublifestyle.com/join/rules.php.  Unlike the rules attached hereto as **Exhibit 4**
9  which are directly discussed in the Combined Motion (see page 5:21-23 and "Exhibit 9" to the
10  Combined Motion) these rules were not discovered by Counsel until March 7, 2008.  Note
11  paragraph 6.1 of these Rules which at the second to last sentence makes express reference to
12  LSO's "Lifestyles Organization".  (**Exhibit 5** exhibit page 16)  Moreover, note that these rules
13  are a version cut and pasted from LSO materials as paragraph 9.2 states that correspondence
14  should be directed to:
15              The Lifestyles Organization®
                ClubLifestyles Division
16              2641 W. La Palma Ave Suite F
17  Compare this section to the same section of 9.2 in **Exhibit 4** which provides that
18  correspondence should be directed to Right Connection, Inc.  (See **Exhibit 4** exhibit page 11)
19       It is a fair and logical conclusion to state that the only reason the Rules obtained from
20  Defendants' website and attached hereto as **Exhibit 4** and to the Complaint and the Combined
21  Motion as "Exhibit 9 were changed is because Defendants are reacting to the specific assertions
22  made in those papers.  Likely, had LSO referenced the rules attached hereto as **Exhibit 5** in the
23  Combined Motion Defendants would have taken steps to modify them as well.  These have not
24  been modified, but those Rules specifically called out in the Combined Motion have been.  The
25  above actions demonstrate that Defendants are destroying evidence, despite the general order to
26  preserve evidence.  The hearing on LSO's motions should be heard immediately as to prevent
27  further harm and destruction of evidence.
28  / / /

LSO'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE THE HEARING; Case No.3-08-CV-00329 H LSP:

## IV.

## <u>DEFENDANTS' WEBSITE IS ACTIVE AND THEY ARE PURPOSEFULLY MISREPREENTING THAT FACT TO THE COURT</u>

The clublifestyl*e*.com (emphasis added) website operated by Defendants is active. Visiting the website and clicking on the links as of March 7, 2008, reveals that the links are active and take you to webpages belonging to the Defendants. Note the copies of screen-captures attached hereto as **Exhibit 6**, which are pages that are actively linked to the main www.clublifestyle.com webpage that counsel for Defendants asserts is "for all intents and purposes [is] inoperative". (Defendants' Application page 4:10-12)  A casual visitor to the website prior March 7, 2008, will notice that the website is active and will be misled by the blatant use of LSO's Trademarks and proprietary information.  Note **Exhibit 6** exhibit page 20 which is linked to Defendants' website but contains references to email addresses apparently associated with *LSO's* Clublifestyle mark. (http:clublifestyle.com/contact.php download March 7, 2008)  Further note the picture of the lady at the top right hand corner of **Exhibit 6** page 22, though this screen shot is from the clublifestyle.com website, the picture contains the Lifestyles mark. (http:clublifestyle.com/contact.php download March 7, 2008)  This picture is the same one that is attached as "Exhibit 2 exhibit pages 3 and 4" to the Complaint; a courtesy copy of which is attached to **Exhibit 3** exhibit pages 6 and 7 to this Opposition)  As described above the link previously attached to the picture of the woman with the Lifestyles Trademark superimposed upon it is now a dead link.  (Declaration of Paul Murray)

Not only is the website active but it is definitely not "currently under Plaintiff's control", and the assertion that the website "has no current connection to Defendants" is blatantly false. (Defendants' Application page 4:10-12)  See **Exhibit 6** exhibit page 20 which is a screen-capture from a webpage linked to Defendants' clublifestyl*e*.com (emphasis added) website that contains a "shopping cart".  (screenshot from http://store.sex-superstore.com/cgi-share/1order.cgi)  LSO's clublifestyle*s*.com (emphasis added) website does not use a "shopping cart" link.   The store.sex-superstore.com website is affiliated and connected to Defendants.

1. Note **Exhibit 6** exhibit page 22 provides that "Credit Card processing provided by Right Connection".
2. As another example, see **Exhibit 6** pages 26 which is another screen-capture obtained from an active link attached to Defendants' www.clublifestyle.com website. The majority of the pages (specifically those not described in LSO's Complaint or Combined Motion) linked to Defendants' website are still active. (**Exhibit 6** exhibit pages 25 downloaded on March 7, 2008, http://www.clublifestyle.com/guests/shopping.php?page=2)
3. Finally, to permanently and finally dispose of the issue of who has control of the www.clublifestyle.com note that the website remains registered to:

   Club Lifestyle
   3585 Palo Verde Blvd. S
   Lake Havasu City, Arizona 86404

   (**Exhibit 7** exhibit pages 27-28) The domain name clublifestyle.com is registered and administered by Defendants. Counsel for Defendants' mere statement that the website is under LSO's control is patently false.
4. As demonstrated above the Defendants are actively modifying and deleting links attached to their website. Only the webhost can do that to a website. LSO does not have access to Defendants' clublifestyl*e*.com (emphasis added) website and any claim to the contrary is sophistry designed to mislead the Court and confuse the issues.

## V.
## LSO IS DISCOVERING MORE EVIDENCE OF DEFENDANTS WRONDOINGS AND INJUNCTIVE RELIEF SHOULD BE GRANTED TO PRESERVE EVIDENCE

Defendants' Counsel asserts that there is no emergency basis to hear the Combined Motion. This is an untrue statement that demonstrates that Counsel is unaware that the Defendants are right now obtaining business as a result of infringing upon LSO's trademarks and through blatant cybersquatting.

LSO has discovered archived copies of webpages set up by Defendants' to steal business away from LSO. **Exhibit 8** exhibit page 29 is a print off of a webpage that was archived on January 9, 2007. (downloaded on March 7, 2008, from

http://webarchive.org/web/20070110051924/http://www.clublifestyle.com)  The webpage asks "Are you looking for [LSO's] Clublifestyles.com??".  On that page is a phone number 866-640-4358 which gets the caller to RCI's vacation reservation service.  (Declaration of Paul S. Murray)  Both exhibit pages 29 and 30 of **Exhibit 8** contain RCI's phone number and email address.  Moreover, these webpages repeatedly use LSO's Trademark "Lifestyle".

Defendants are delaying having to substantively respond to LSO's Combined Motion and are attempting to pass off mere argument as evidence that LSO's action does not have merit.  The delay tactics should be disregarded and LSO respectfully requests that this Honorable Court deny the Application.

## VI.

## THE ALLEGATION THAT DISQUALIFICATION MIGHT BE PROPER IS UNTRUE, IMPROPER AND SHOULD BE RETRACTED WITH APOLOGIES TO COUNSEL

The actual relationship that Defendants' Counsel attempts to but fails to understand or describe involves Digital Computer Design, Incorporated ("DCD") a Company that was dissolved in late 2003, which has no relationship or interest in the current lawsuit. (See **Exhibit 8** exhibit page 31) an information sheet for DCD printed off from the California Secretary of State Business Portal site on March 7, 2008)  Previously, LSO hired DCD to create a program for LSO.  Paul Murray's prior relationship to the company was as its attorney.  No facts exist that support the suggestion that disqualification of LSO's counsel might be an issue that should even be raised.  (Declaration of Paul S. Murray)

Defendants are attempting to derail these proceedings through unsupported allegations.  The Defendants have had adequate time to draft an opposition to the motion, and as discussed below there is no reason for the Court to continue any proceedings or due dates in this matter.

## VII.

## THE COURT HAS PERSONAL JURIDICATION OVER THE DEFENDANTS AND VENUE IN THE SOUTHERN DISTRICT OF CALIFORNIA IS PROPER

Defendants again fail to support their argument that venue and jurisdiction is improper with evidence.  The Defendants fail to address how jurisdiction and venue is improper in light

LSO'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE THE HEARING; Case No.3-08-CV-00329 H LSP:

1  of the following facts currently available to the Court and the Defendants which supporting
2  documentation is attached to the Complaint.  The Agreement at issue in this litigation was
3  executed in Southern California and specifically provides that "This agreement shall be
4  enforceable under the laws of the state of California.  (See Complaint "Exhibit 1", exhibit page
5  2)  The Clublifestyles website operated by Defendants demonstrates that Defendants actively
6  conducts business in California. (See Complaint "Exhibit 2", exhibit page 3, note the reference
7  to Alpine, CA. (at the top left), and the testimonials of residents of Los Angeles and San Diego)
8  Defendants maintain an address at 8690 Aero Dr. here in San Diego.  (See Complaint "Exhibit.
9  8", exhibit page 14)

10  The principal place of business for Defendants is on Aero Dr., this was the location for
11  several meetings between Defendants with the Plaintiff and its agents.

12  Note again "Exhibit 9" to the Complaint which provides in its User Agreement that it
13  was "made in and shall be construed and enforced in accordance with California law[;] [a]ny
14  action to enforce this agreement shall be brought in the federal or state court located in
15  California.  (See Complaint "Exhibit 9", exhibit page 18 paragraph 9.1)

16  The assertion that a possible motion challenging venue and personal jurisdiction directly
17  contradicts facts that LSO has provided in its Complaint and papers in support of the request for
18  injunctive relief is a red herring that the Court should ignore in determining whether a
19  continuance is necessary.

## VIII.

### THE COURT IS ATTEMPTING TO MISLEAD THE COURT
### BY RAISING THE RED HERRING OF A RULE 11 MOTION

23  Defendants improperly suggest that with some time they will be able to meet the high
24  burden of FRCP Rule 11.  The intimation that a Rule 11 motion might have to be considered
25  prior to hearing the request for injunctive relief is improper.  "It is anticipated that in the case of
26  pleadings, the sanctions issue under Rule 11 normally will be determined at the end of the
27  litigation; and in the case of motions, at the time when the motion is decided or shortly
28  thereafter."  (Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial

1  (The Rutter Group 2001) Paragraph 17:110.1, page 17-48 citing to 1993 Adv. Comm. Note to
2  Amended Rule 11, 146 FRD 401, 590; and *Donaldson* v. *Clark* (11th Cir. 1987) 819 F2d 1551,
3  1556)  Of course, it is expected that Defendants will assert that the request for injunctive relief
4  is improper, such a position can be asserted in their opposition papers.  Similarly, issues
5  regarding LSO's bankruptcy as it is affected by this lawsuit, or the issue of unclean hands
6  should be properly addressed in opposition papers, which Defendants have had plenty of time
7  to draft.  Consequently, the suggestion that Defendants' *ex parte* request might be proper due to
8  Rule 11 issues is at best premature, and more likely, a reflection that the *ex parte* request lacks
9  sufficient factual justification to grant.
10      The very fact that Defendants have reacted to the Complaint and Combined Motion by
11 attempting to destroy evidence, modify its website, and return the subject servers removes any
12 possibility that this action was brought without probable cause.

## VIII.

## THE APPLICATION SHOULD BE DENIED AND THE MOTION FOR INJUNCTIVE RELIEF SHOULD BE HEARD IN A TIMELY MANNER

16      Defendants claim that had they had eight (8) more days to prepare for the Hearing the
17 requested continuance may not have been necessary. (See Defendants' Application page 6:9-
18 11)  Apparently, with eight more days, the Defendants would have been able to investigate and
19 prepare opposition papers (or other motions) regarding Rule 11 sanctions, disqualification of
20 counsel, bankruptcy issues, and issues regarding service, venue and jurisdiction.  The
21 Defendants should be ordered to draft their opposition papers to the Combined Motion
22 immediately.  The Application should be denied.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

# IX.

# CONCLUSION

For the foregoing reasons LSO respectfully requests that this Honorable Court deny Defendants' Application for a continuance of the hearing.

Dated: March 7, 2008                                **Murray** & **Sabban, LLP**


By: _/S/ *Paul S. Murray*_____
    Paul S. Murray, Esq.
    Attorney for Plaintiff LSO, LTD.

_____

# INDEX OF EXHIBITS

Attached are true and correct copies of the Exhibits referenced above in these Points & Authorities. They are identified by exhibit number and also by exhibit page number in sequence.

**Exhibit 1 (pages 1-2):** Information sheet for Right Connection Inc. from the Nevada Secretary of State downloaded on February 7, 2008;

**Exhibit 2 (page 3):** Email chain between Don Hughes to Attorney Paul Murray from February 26, 2008;

**Exhibit 3 (pages 4-7):** Pages 4 and 5 are a copy of a resultant error message downloaded on February 28, 2008; Pages 6 and 7 are courtesy copies of a screen shot downloaded from the www.clublifestyle.com website on February 11, 2008;

**Exhibit 4 (pages 8-11):** Partycouples' Rules downloaded from the www.partycouples.com website on February 28, 2008;

**Exhibit 5 (pages 12-20):** Clublifestyle's Rules downloaded from www.clublifestyle.com on March 7, 2008;

**Exhibit 6 (page 21 to 26):** Copies of webpages linked to the www.clublifestyle.com website downloaded on March 7, 2008;

1 **Exhibit 7 (pages** 27**-28):**  Copy of email to Attorney Paul Murray listing registration information to clublifestyle.com website;

3 **Exhibit 8 (page 29-30):**  Copies of webpages printed from on-line archiving website for the website www.clublifestyle.com, downloaded on March 7 2008;

5 **Exhibit 9 (page 31):**  Copy of California Secretary of State Business Portal Corporations information page for Digital Design Incorporated, downloaded on March 7, 2008.