Gregory P. Goonan (Cal. Bar #119821)
**The Affinity Law Group APC**
600 West Broadway, Suite 400
San Diego, CA  92101
Tel:  619-702-4335
Fax:  619-243-0088
E-Mail:  ggoonan@affinity-law.com

Specially Appearing as
Attorneys for Defendants
Donald D. Hughes and
Right Connection, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LSO, Ltd., a California corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>Donald D. Hughes; Right Connection, Inc., a Nevada Corporation; and DOES 1 through 20 inclusive,<br><br>    Defendants. | Case No.  08CV0329 H (LSP)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND WRIT OF POSSESSION**<br><br>Date: March 17, 2008<br>Time:  10:30 am<br>Court:  13 (Hon. Marilyn L. Huff) |

---

*DEFENDANTS' MEMO P&A OPPOSITION TO PLAINTIFF'S MOTION FOR TRO AND WRIT OF POSSESSION*
- 1 -

Defendants Donald D. Hughes and Right Connection, Inc. ("Right Connection") (collectively "Defendants") hereby appear specially and submit this memorandum of points and authorities in opposition to the motion for temporary restraining order and application for writ of possession filed by plaintiff LSO, Ltd. ("Plaintiff").

As Defendants explained in their ex parte application seeking a continuance of the March 17 hearing, neither of Defendants is subject to personal jurisdiction or venue in this Court, and neither of the defendants has been properly served by Plaintiff. Consequently, as expressly provided and allowed by the Court's February 21 Scheduling Order, Defendants submit this memorandum pursuant to a special appearance "for the limited purpose of opposing Plaintiff's motion for a TRO and application for a writ of possession." [February 21, 2008 Scheduling Order at p. 2, lines 10-11.] By submitting this memorandum in opposition to Plaintiff's motion for a TRO and application for writ of possession, Defendants, and each of them, expressly reserve and do not waive any and all objections they may have based on improper service, lack of personal jurisdiction and/or improper venue.

## PROCEDURE

As best as Defendants' counsel can understand the papers filed by Plaintiff so far as well as the files and records in this case, Plaintiff has filed the following: (1) Application for Temporary Restraining Order [Document No. 6]; (2) Application for Writ of Possession [Document No. 7] and (3) Combined Motion for Temporary Restraining Order and Preliminary Injunction [Document No. 5]. Pursuant to the Court's February 21 Scheduling Order, the matters to be heard on March 17 will be Plaintiff's motion for a TRO and application for writ of possession. [February 17 Scheduling Order at p. 2, lines 6-7.]

Given the plain language of the Court's February 21 Scheduling Order, Plaintiff's motion for preliminary injunction will not be heard on March 17. If the Court denies Plaintiff's motion for a TRO (which, as discussed herein, is the correct result), Plaintiff's motion for a preliminary injunction will have to be set for a hearing on some date in the future if Plaintiff decides to go forward with such motion. Under such circumstances, Defendants object to having the preliminary injunction motion heard on shortened time. Instead, if Plaintiff decides to pursue a

preliminary injunction, such motion should be heard on regular notice.

If the Court decides to grant a TRO to Plaintiff, such TRO can only be for 10 days duration as provided by FRCP 65(d)(2). In such case, Plaintiff's preliminary injunction motion will need to be set for hearing no later than March 27, 2008.

In either case, Defendants request that the Court hold an evidentiary hearing on any motion for preliminary injunction that may be pursued by Plaintiff and order Plaintiff to produce for cross examination any and all witnesses who submit declarations in support of Plaintiff's preliminary injunction motion. Defendants likewise will produce their witnesses for testimony and cross examination.

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR WRIT OF POSSESSION SHOULD BE DENIED IN THEIR ENTIRETY

With all due respect to Plaintiff, the papers it has filed in support of the proceedings to be heard by the Court on March 17 are rambling, far-reaching (indeed, in Defendants' view, overreaching) and (at least in Defendants' view) hard to follow. Consequently, Defendants believe it is critical at the outset to focus on the specific relief sought by Plaintiff by its TRO motion and application for writ of possession so that the analysis of Plaintiff's request can proceed in a precise and logical fashion. As Defendants read Plaintiff's papers, Plaintiff is asking the Court to grant the following relief on March 17:

1. A writ of possession requiring Defendants to surrender possession of two 1U High-Speed Rack Computer Servers;

2. A TRO enjoining the use or disclosure of any and all "client lists" provided by Plaintiffs and/or its officers, agents or employees to Defendants [Combined Motion for Temporary Restraining Order and Preliminary Injunction ("Combined Motion") ¶ 2];

3. A TRO enjoining Defendants from contacting anyone in Plaintiff's "client list" [Combined Motion ¶ 3];

4. A TRO enjoining Defendants from using the name "Lifestyles" or "passing off" that Defendants are "affiliated or associated with, or sponsored or authorized by" Plaintiff

[Combined Motion ¶ 4];

5. Although it is not clear from Plaintiff's papers, Plaintiff also appears to seek a TRO enjoining Defendants from offering products or services using the alleged common law trademark "Clublifestyles" supposedly owned by Plaintiff [Combined Motion ¶ 4];

6. Although it also is not clear from Plaintiff's papers, Plaintiff likewise appears to seek a TRO enjoining Defendants from offering products or services using the alleged common law trademark "Desire-Resorts" supposedly owned by Plaintiff [Combined Motion ¶ 4];

7. A TRO enjoining Defendants from "unfairly competing" with Plaintiff (whatever that means)[Combined Motion ¶ 4];

8. A TRO enjoining Defendants from "unfair and deceptive trade practices" (again whatever that means [Combined Motion ¶ 4];

9. A TRO enjoining Defendants from "injuring [Plaintiff's] business reputation and diluting its trademark rights" [Combined Motion ¶ 4];

10. A TRO enjoining "Defendant" (which one is not clear) from using, displaying, distributing or otherwise "revealing" the "infringing" Lifestyle trademark [Combined Motion ¶ 5]; and

11. A TRO enjoining Defendants' use of the Exotic Travel Mart program, Plaintiff's Trip Cash program, or any "similar program that was derived from [Plaintiff's] property and computers" [Combined Motion ¶ 6].[1]

As discussed in detail herein, Plaintiff's application for a writ of possession is moot, and Plaintiff has not satisfied – and cannot satisfy – the stringent requirements for issuance of the extraordinary remedy of a TRO. Accordingly, Plaintiff's application for a writ of possession and TRO motion should be denied in their entirety.

Defendants submit herewith under separate cover the Declaration of Donald Hughes (the "Hughes Declaration") to provide the factual support for Defendants' opposition to Plaintiff's

---

[1] Plaintiff's TRO motion also appears to seek expedited discovery from Defendants. But as set forth in the Court's February 21 Scheduling Order, the issue of expedited discovery is to be addressed with Magistrate Judge Porter.

application for a writ of possession and motion for a TRO.

### A. Plaintiff's Application for A Writ Of Possession Is Moot And Should Be Denied Because Right Connection Already Has Returned Plaintiff's Servers

Plaintiff's application for a writ of possession is moot. As explained in paragraphs 70 through 73 of the Hughes Declaration, Right Connection -- the party that was in possession of Plaintiff's computer servers -- had been trying for many months to return the servers to Plaintiff, with no success. Finally, on February 28, 2008, Right Connection at its own expense shipped the servers back to Plaintiff's counsel via Federal Express. [See Hughes Declaration ¶¶ 70-73; Exhibit J.] So, Defendants no longer are in possession of Plaintiff's servers and there is no basis for the issuance of a writ of possession.

### B. Plaintiff's TRO Motion Should Be Denied Because Plaintiff Is Seeking To Dramatically Change Not Preserve The Status Quo

The law is clear and well-settled that the purpose of a TRO heard on shortened time, like the TRO sought by Plaintiff here, is to <u>preserve the status quo</u> pending a full and complete hearing on a preliminary injunction motion. Rule 65(b) of the Federal Rules of Civil procedure permits the issuance of a TRO <u>only to prevent immediate and irreparable injury to the applicant</u>. Stated another way, the function of a temporary restraining order is to preserve the status quo pending a fuller hearing on a motion for preliminary injunction. As the court explained in <u>Onan Corp. v. United States</u>, 476 F. Supp. 428, 433 (D. Minn. 1979):

> Normally at the temporary restraining order stage the court does not apply the preliminary injunction standards. Rather the court is concerned primarily with the need to maintain the status quo for the short period until the preliminary injunction hearing, at which time the matter can be more fully briefed and presented by the parties and more carefully considered by the court. Consequently, the inquiry centers on the balance of hardships and the probable irreparable harm that may result if the TRO is granted or denied.

In stark contrast to the proper purpose of a TRO, what Plaintiff seeks here is a dramatic change in the status quo under circumstances where Plaintiff has not demonstrated and cannot show any immediate irreparable harm that requires the issuance of a TRO. This is so because Plaintiff by its TRO motion is seeking to disrupt and shut down Right Connection's business even

though Right Connection has been engaging in such business for many months without so much as an objection from Plaintiff.

Simply stated, this case presents a situation that is much different than the normal TRO situation, where the applicant seeks to stop alleged wrongful conduct that is imminent and about to commence for the first time (i.e. the sale of counterfeit goods). Because Plaintiff has not satisfied and cannot satisfy the requirements for a TRO – and Plaintiff's motion is in fact inimical to the purposes of the TRO procedure -- Plaintiff's TRO motion accordingly should be denied and the matter set down for full briefing and a full hearing on a preliminary injunction motion if Plaintiff still wants to pursue injunctive relief.

C. Plaintiff's TRO Motion Should Be Denied In Its Entirety Because Plaintiff Has Unclean Hands

Plaintiff's request for a TRO should be denied in its entirety because Plaintiff is guilty of unclean hands. The law is well settled that injunctive relief may be denied to any person who comes before the Court seeking an injunction but is itself guilty of wrongdoing and unclean hands. [*See*, *e.g.*, *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002).]

Here, Plaintiff accuses Defendants of unfair business practices and infringement of its trademark and intellectual property rights. But as demonstrated by the Hughes Declaration, Plaintiff itself is guilty of substantial wrongdoing and unclean hands:

1. As Mr. Hughes explains at paragraphs 80 through 82 of his Declaration, Plaintiff's bankruptcy finding demonstrates that Plaintiff has misappropriated hundreds of thousands of dollars of customer money, and in doing so has violated California law governing travel booking companies like Plaintiff. [*See* Cal. Business & Professions Code § 15500.15 et seq.]

2. Mr. Hughes' Declaration also demonstrates that while Plaintiff is quick to accuse Defendants (without basis) of violating Plaintiff's intellectual property rights, Plaintiff itself has patently and seriously abused the intellectual property rights of Right Connection and engaged in unfair competition by registering domain names for the sole purpose of stealing business from Right Connections and third parties. [See Hughes Declaration ¶¶ 68-70.]

3. Finally, Mr. Hughes' Declaration also establishes that Plaintiff is prosecuting this TRO

*DEFENDANTS' MEMO P&A OPPOSITION TO PLAINTIFF'S MOTION FOR TRO AND WRIT OF POSSESSION*
- 6 -

proceeding (and indeed this entire lawsuit) for vindictive reasons and for an improper purpose because Right Connection has exercised its rights as one of Plaintiff's creditors in its bankruptcy. [See Hughes Declaration ¶¶ 76-79.]

### D. Plaintiff's TRO Motion Should Be Denied Because Plaintiff Will Not Prevail On The Merits Of Its Claims

The issuance of temporary restraining orders and preliminary injunctions is governed by Rule 65 of the Federal Rules of Civil Procedure. In the Ninth Circuit, a trademark owner is entitled to injunctive relief when it demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in favor of the trademark owner. [*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).] In the appropriate case, the Court may also consider how the pubic interest would be affected by the grant or denial of injunctive relief. [*Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir. 1980).]

Here, Plaintiff will not prevail on the merits of any of its claims so Plaintiff is not entitled to the TRO it seeks:

1. <u>Purported Client Lists</u>: Plaintiff's request for a TRO concerning Plaintiff's purported client lists must be denied because Defendants simply do not have any "client lists" that belong to Plaintiff. As demonstrated by the Hughes Declaration, Plaintiff never gave Defendants any hard copies, paper copies or electronic copies of any client lists or customer lists. [See Hughes Declaration ¶¶ 25-29.]

As further demonstrated by the Hughes Declaration, Plaintiff's accusation that Right Connection supposedly diverted the e-mail addresses of Plaintiff's customers or secretly inserted some code into Plaintiff's website to divert customer information to Right Connection (which critically, by Plaintiff's own evidence, is only the "opinion" of some unidentified person not offered in a sworn declaration) is patently false – Plaintiff has completely misrepresented the purpose of the referenced code, which was placed in Plaintiff's website <u>at Plaintiff's request</u> to allow Plaintiff to debug operational problems with the website caused by duplicate e-mail

addresses in Plaintiff's database.[2] [See Hughes Declaration ¶¶ 9, 30-34.]

In any event, the TRO requested by Plaintiff with respect to the purported "client list" is grossly overbroad in that it does not exclude customers who may contact Right Connection independently or who may have become customers of Right Connection with any regard to Right Connection's dealings with Plaintiff (which are all of Right Connection's customers).

Because Plaintiff cannot prevail on the merits of its claim regarding the customer lists – and indeed has not introduced admissible evidence sufficient to even raise a serious issue regarding the customer lists – Plaintiff's request for a TRO regarding the customer lists must be denied.

2. <u>The Lifestyles Trademark</u>:  Plaintiff's request for a TRO with respect to its Lifestyles trademark must be denied because there is no evidence that Defendants are engaging in any conduct that infringes, or threatens to infringe, such trademark.  The only purported evidence of Defendants' alleged infringement of the Lifestyles trademark offered by Plaintiff is the Lifestyles banner advertisement on the clublifestyle.com website.  However, as discussed in detail in Mr. Hughes' Declaration, such banner advertisement – and indeed all of the content of the clublifestyle.com website -- was placed on the clublifestyle.com website <u>by Plaintiff</u> and, in any event, has been a dead link for several months now. [See Hughes Declaration ¶¶ 24, 62.]  So Plaintiff cannot prevail on the merits of its claims regarding the Lifestyles trademark.

3. <u>The Clublifestyle Website</u>:  There likewise is no basis for the Court to enter a TRO with respect to the clublifestyle.com website because Defendants are not making any use of the website.  As the Court will learn when it reads Mr. Hughes' declaration, Plaintiff's recitation of the history of the development of the clublifestyle.com website simply is not true. [See Hughes Declaration ¶¶ 10-24, 47-64.]

It is absolutely false as Plaintiff claims that Defendants created such website as a vehicle to

---

[2] Plaintiff has submitted a declaration from its principal Robert McGinley that purports to explain the subject code in Plaintiff's website.  However, like most of Mr. McGinley's declaration, Mr. McGinley's purported testimony in such regard is not admissible because there is no foundation that Mr. McGinley has any computer programming background or experience that would allow him to offer admissible testimony about computer programming and coding issues.

somehow divert business and customers from Plaintiff. On the contrary, as such website was creation was created at the direction of Plaintiff, with the full knowledge, consent and participation of Plaintiff. [See Hughes Declaration ¶¶ 47-64.]

All content on the clublifestye.com website was created by Plaintiff and currently is controlled by Plaintiff. [See Hughes Declaration ¶¶ 24, 62.] Certainly, there is no evidence that Defendants have generated a single customer contact or a single penny of revenue from the clublifestyle.com website. On the contrary, the evidence here demonstrates that (1) the clublifestyles.com website essentially is a dead site; (2) the website has had very few hits in the past three months; and (3) Defendants have not generated a single penny of revenue or profit from the website since 2006. [See Hughes Declaration ¶¶ 63-64.]

Consequently, Plaintiff will not prevail on the merits with respect to its claims about the clublifestyle.com website.[3]

4. <u>Desire-Resorts Trademark</u>: It is axiomatic that a party can only obtain injunctive relief to protect a trademark if the party seeking the injunction actually has a protectible ownership interest in the trademark at issue. [*See Department of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2005).]

Plaintiff's claim concerning the Desire-Resorts trademark fails on the merits because Plaintiff does not own and cannot own any trademark rights in the Desire Resorts trademark or any variation of such term such as the "desire-resort.com" domain name used by Right Connection. This is so because Plaintiff does not own or operate the Desire Resorts. On the contrary, as explained in the Hughes Declaration, the Desire Resorts are two adult-orientated resorts located in Mexico that are owned and operated by a third party with no affiliation with Plaintiff and for which Plaintiff, Right Connection and any other travel business can book travel. [See Hughes Declaration ¶¶ 65-67; Exhibit G.]

---

[3] Because Plaintiff has access to and control of all code for the clublifestyle.com website, Plaintiff's technical personnel can access the clublifestyle.com program code and make whatever changes Plaintiff believes are necessary to remove objectionable content or references to Right Connection from the website. Critically, Plaintiff does not require a TRO to make such changes.

Consequently, it can be seen that it is in fact Plaintiff that is engaging in improper conduct by using the TRO proceedings of the Court to try to corner the market and eliminate competition from Right Connection for bookings for travel to the Desire Resorts. Indeed, if the TRO sought by Plaintiff were to be granted with respect to the use of the Desire Resorts name to book travel, such a TRO would be tantamount to the issuance of injunctive relief against one travel agent prohibiting it from using the name "Hyatt" or "Hilton" to book travel because a competitor also books travel at Hyatt and Hilton hotels. The law simply does not support the use of injunctive relief in such regard.

5. <u>Trip Cash Program</u>: Plaintiff also cannot be given a TRO with respect to its "Trip Cash" program because Plaintiff will not prevail on the merits of such claim. [See Hughes Declaration ¶¶ 39-46.] Plaintiff cannot claim and does not own any rights to the concept or idea of an affiliate travel program like Plaintiff's Trip Cash program or Right Connections' Exotic Travel Mart program. Indeed, there are hundreds if not thousands of similar affiliated travel programs in operation on the Internet.

Plaintiff has not offered (and cannot offer) any evidence that Defendants are using the actual "Trip Cash" name. Likewise, Plaintiff has not offered any evidence and cannot demonstrate that there is any similarity between Right Connections' Exotic Travel Mart website and any website by which Plaintiff utilizes the Trip Cash program. So, there is no basis to issue a TRO with respect to the Trip Cash program.

6. <u>Other Alleged Wrongful Conduct</u>: As explained above, Plaintiff also appears to seek a TRO enjoining Defendants from "unfairly competing" with Plaintiff, from "unfair and deceptive trade practices," and from "injuring [Plaintiff's] business reputation and diluting its trademark rights."

Defendants demonstrate herein why there is no merit to any of the specific complaints of alleged misconduct leveled by Plaintiff. To the extent that Plaintiff also is seeking injunctive relief for some other, unspecified conduct, its request for a TRO in such regard is hopelessly vague, ambiguous and uncertain and must be denied.

Rule 65(d) of the Federal Rules of Civil Procedure requires that an injunction "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained." The Supreme Court has explained that "one basic principle built into Rule 65 is that those against whom an injunction is issued should receive <u>fair and precisely drawn notice</u> of what the injunction actually prohibits." [*Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 444, (1974); <u>see also</u> <u>Schmidt v. Lessard,</u> 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of <u>Rule 65(d)</u> are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.").

Plaintiff's motion presents a textbook example of a case where a party is seeking an injunction in violation of the specificity requirements of FRCP 65(d). Plaintiff seeks to enjoin unspecified "unfairly competition," "unfair and deceptive trade practices," and/or injury to Plaintiff's "business reputation" and "diluting its trademark rights." Such terms on their face are not precisely drawn and do not give fair notice of the conduct that Plaintiff seeks to enjoin. Plaintiff's motion should be denied for this additional reason. [*See* <u>Union Pacific Railroad Co. v. Mower</u>, 219 F.3d 1069, 1077 (9th Cir. 2000).]

    E.    <u>Plaintiff's TRO Motion Should Be Denied Because Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Harm If The TRO It Seeks Is Not Granted</u>

Finally, Plaintiff's request for a TRO must be denied because Plaintiff cannot demonstrate the requisite irreparable harm. Plaintiff's argument regarding irreparable harm is that it currently is in a Chapter 11 bankruptcy reorganization "which is reliant upon the continuing ability of [Plaintiff] to conduct business with its established clientele."

Critically, Plaintiff has not introduced any admissible evidence that it has lost a penny of revenue or any business or customers whatsoever from any action of Defendants. Indeed, in its bankruptcy filings and bankruptcy testimony, Plaintiff identified a number of reasons other than any conduct of Defendants that have resulted in its bankruptcy, and did not make any mention at all of Defendants' conduct in either its bankruptcy filings or its examination by creditors. [See

Hughes Declaration ¶¶ 76-78; Exhibit K.]

Just as important, Plaintiff's bankruptcy filings disclose in excess of $1 million in unsecured debt separate and apart from the more than $1 million in debt owed to Plaintiff's principal. [See Exhibit L.] Plaintiff has not explained how it will be able to service and pay off such a massive amount of debt and thereby stay in business. Consequently, there is no evidence that Plaintiff will be able to stay in business even if it is granted injunctive relief it seeks. Likewise, Plaintiff has not introduced any evidence that it will go out of business <u>because of Defendants' conduct</u> if injunctive relief is not granted. Indeed, the evidence shows otherwise. [See Hughes Declaration ¶¶ 76-78; Exhibit K.]

Simply put, Plaintiff has not made the showing of irreparable harm required for the issuance of injunctive relief, much less the threat of immediate irreparable harm necessary for the issuance of a TRO.

## THE COURT SHOULD ORDER PLAINTIFF TO POST A SUBSTANTIAL BOND IF THE COURT GRANTS PLAINTIFF'S TRO MOTION

As set forth in paragraph 83 of the Hughes Declaration, Right Connection generates gross sales close to $200,000.00 per month from its services, sale of goods, websites, and related services. As the Court is aware, any TRO that may be issued by the Court must be secured by a sufficient bond as required by FRCP 65(c). If the Court decides to grant a TRO to Plaintiff, Defendants request a bond of at least $200,000.00. Such a high bond is especially appropriate here given Plaintiff's bankruptcy proceeding, which makes it highly unlikely that Defendants could collect damages from Plaintiff for wrongful injunction in the absence of a substantial bond.

DATED: March 12, 2008          THE AFFINITY LAW GROUP APC

By: ___*/s/ Gregory P. Goonan*___
    Gregory P. Goonan
    Specially Appearing as
    Attorneys for Defendants
    Donald D. Hughes and Right Connection, Inc.
    E-mail: ggoonan@affinity-law.com

**Certificate of Service**

The undersigned hereby certifies that on this 12th day of March 2008, a true and accurate copy of the attached document was electronically filed with the Court, to be served by operation of the Court's electronic filing system, upon the following:

>Paul S. Murray
>Ariel J. Sabban
>Murray & Sabban LLP
>140 Marine View Avenue, Suite 116
>Solana Beach, CA  92075
>Attorneys for Plaintiff

>*/s/ Gregory P. Goonan*
>Gregory P. Goonan