**MURRAY & SABBAN, LLP**
Lomas Santa Fe Professional Building
140 Marine View Avenue, Suite 116
Solana Beach, CA 92075
Telephone (858) 259-8052
Telecopier (858) 259-8055
pmurray@murrayandsabban.com
Paul S. Murray, SB# 158280
Ariel J. Sabban, SB# 189414

Attorneys for Plaintiff LSO, LTD.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LSO, LTD. a California Corporation,<br><br>         Plaintiff,<br><br>vs.<br><br>DONALD D. HUGHES; RIGHT CONNECTION, INC., a Nevada corporation; and DOES 1 through 20 inclusive,<br><br>         Defendants. | Civil Action No.:  3:08-cv-00329 H (LSP)<br>Judge:  Hon. Marilyn L. Huff<br>Courtroom 13<br><br>**PLAINTIFF LSO LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION PAPERS REGARDING LSO LTD.'S COMBINED MOTION FOR INJUNCTIVE RELIEF**<br><br>Date: March 17, 2008<br>Time: 10:30 a.m. |

Plaintiff LSO, LTD. ("LSO") respectfully submits the following Memorandum of Points & Authorities in Reply to Defendants DONALD D. HUGHES and RIGHT CONNECTION, INC.'s (hereinafter "Defendants") Opposition to LSO's Combined Motion for Injunctive Relief. These Reply papers are submitted subject to LSO's previously filed motion to strike Defendants' opposition papers on the basis that they were untimely filed in violation of Court Order. Further, LSO respectfully requests that the Court strike Defendants' Exhibits A, C, E, H, I, K and L, and also particular statements made in the Declaration of DONALD HUGHES which were submitted by Defendants in support of their opposition papers. LSO respectfully requests rulings on these motions to strike and objections prior to consideration of the merits of

LSO's request for a Temporary Restraining Order and Preliminary Injunction ("Combined Motion").

## I.

## **INTRODUCTION**

Defendants have gone to great lengths to distract the Court from the substantive issues of the Combined Motion. Defendants are unable to defend against LSO's allegations presented in support of its Combined Motion with any veracity. Recall that in response to Defendants' prior request for a continuance of this hearing, LSO provided a comprehensive opposition highlighting evidence that Defendants are tampering with and destroying evidence ***in direct response*** to the facts contained in the Combined Motion and Complaint. [1]

Defendants have avoided explaining their actions which prove that they have infringed on LSO's Trademarks, among other bad acts, and yet maintain that LSO will not prevail on the merits and correspondingly is not suffering irreparable harm.

## II.

### **DEFENDANTS' ACTS PROVE THAT CONVERSION AND MISAPPROPRIATION OF TRADE SECRETS HAS OCCURRED**

**A.   The Events Surrounding the Acquisition, Possession and Return of LSO's Servers Prove that Defendants Converted LSO's Servers, Client List, and Domain Name.**

Defendants' act of returning LSO's computer servers might have mooted the need for a Writ of Possession, but it also absolutely proves that LSO will prevail on its conversion claim. Conversion requires LSO to show that Defendants possessed the computer servers without LSO's consent to LSO's harm. (See again Calif. Jury Instructions CACI no. 2100) Again, the minute that the contract between LSO and Defendants ended, Defendants were not entitled to possess the computers. At all times relevant Defendants knew that LSO had an office off W. La Palma Ave. in Anaheim, and did not return the servers pursuant to repeated requests. The

---

[1] Rather than repeat the allegations contained in the previously filed Opposition to Defendants' *ex parte* application, LSO respectfully requests that the Court consider that Opposition in ruling upon LSO's Combined Motion. Specific page references are provided where reference is made to law, argument or exhibits are discussed in detail in LSO's Opposition to the *ex parte* request.

return of the servers merely affects the harm/damages that LSO will ultimately claim with regard to the conversion.

**B.   The Act of Converting LSO's Client List Meets the Elements for Misappropriation of Trade Secrets.**

The computer servers contain LSO's client list and as admitted by Defendants, the web content for clublifestyle.com.  When Defendants improperly retained LSO's computer servers they also committed misappropriation pursuant to Calif. Civil Code § 3426.1.  Again, as specified in the Combined Motion, digital data, like a client list or a domain name can be subjected to an act of conversion.  (Please see the authority cited in the Combined Motion on pages 15:10 to 17:6)  LSO's client list is a trade secret that Defendants are using to expand their own business.  Thus, since the computer servers contain LSO's client lists, and the website content for the stolen Clublifestyle.com website, it is highly probable that LSO will prevail on the merits of its misappropriation claim. [2]

Returning the servers does not have the retroactive effect of eliminating a cause of action.  In fact it has the opposite effect of supporting the claim that they were improperly converted and misappropriated.  Though the servers have been returned, injunctive relief is necessary to prevent the use of the client list and other LSO proprietary material from being used by Defendants in other media.

Defendants claim that LSO has unclean hands because LSO has taken Defendants' client list.  This is untrue. (See the Declaration of Bruce Kinnee filed in support of the Reply)  Moreover, the Declaration of Jaime Allen (an independent witness unaffiliated with any of the parties) filed concurrently with these papers, describes how HUGHES set himself up to provide web hosting services for Mr. Allen's website, and then how HUGHES took Mr. Allen's client database.  HUGHES is attempting to muddy the waters with unsupported allegations.  Mr.

---

[2] See the Dec. of DONALD HUGHES filed in support of the Oppo. page 11:7-8, though LSO specifically rejects the contention that the servers were controlled by Messrs. Valentiner and Kinnee, this statement proves that the website that is the subject to the conversion claim was improperly possessed in the medium of the servers by Defendants.  Though, LSO maintains that Defendants continue to have improper control over the website, the fact that Defendants converted and then returned LSO's servers demonstrates that LSO will prevail in its conversion and misappropriation causes of action.

1  Allen's Declaration shows just how Defendants developed "their" 125,000 member client list
2  after being in the adult travel business for just "many months" (Defendants' Opposition page
3  6:1)

### C. Defendants Statements Regarding the Hidden Cookie Are Illogical

Mr. Bruce Kinnee discovered the imbedded code in LSO's website that blind copies all new incoming e-mail addresses to HUGHES. This code was not part of the script routine used to "clean –up" bad e-mail addresses. (Dec. of Bruce Kinnee) HUGHES' Declaration fails to explain why the code would cause emails to be sent to HUGHES; moreover he <u>does not</u> deny being blind copied on emails that were sent to LSO's website. Further, apparently HUGHES forgot that Defendants had just returned LSO's servers to it, which contravenes HUGHES' assertion that RCI "had no access to Plaintiff's new servers in any event". (Dec. of HUGHES ¶ 31) HUGHES *admits* to having purchased them for LSO (Dec. of HUGHES ¶¶ 50 and 51), and as Defendants have repeatedly reminded the Court, Defendants were in possession of the servers and only recently returned them to LSO's counsel via Federal Express. HUGHES' statements regarding client lists should be disregarded in light of the obvious misstatements and doubletalk contained therein.

### III.
### LSO WILL PREVAIL ON THE TRADEMARK INFRINGEMENT AND CYBERPIRACY CLAIMS

Defendants cannot refute that the stolen website contains LSO's trademarks and improperly links to Defendants websites. Preliminarily, note that the website that Defendants have stolen from LSO is the www.clublifestyle.com website, not the www.clublifestyl<u>*es*</u>.com website (emphasis added).

LSO has provided evidence that Defendants registered the www.clublifestyle.com website, and is continuing to use the website in breach of contract. (See the LSO's Opposition to Defendants *Ex Parte* at page 6:1 to 7:18) In response, Defendants meekly assert that Plaintiff gave permission or in fact placed LSO's trademarks on the website itself. If the

1  subject website did not link to Defendants' websites, then Defendant in their opposition could
2  have provided screen shots with appropriate explanation describing where each link takes the
3  website visitor.  If Defendants claim that the subject website is "essentially dead" then the links
4  contained within it should not have led to Defendants' web pages (at the time this action was
5  filed).  This is not the case.  The website [3] was and continues to be active and links the visitor to
6  websites affiliated with or owned by Defendants.  Defendants cannot refute that *as of March 7,*
7  *2008*, the subject website was actively linking visitors to Defendants' web pages using links
8  containing LSO Trademarks.

9  After LSO notified HUGHES that he could obtain a copy of the Combined Motion and
10 Complaint from the Court, the website began to change.  Some of the links that were called out
11 by LSO to support the claim of trademark infringement and cyberpiracy have since been made
12 inactive.  Notably, while the Defendants discuss the "banner advertisement" (Defendants'
13 Opposition page 8:13-14), they ***totally ignore*** LSO's contentions regarding the link attached to
14 the picture of a woman with a superimposed *Lifestyles* trademark across her torso.  This link as
15 described in LSO's Opposition to the *ex parte* request is now dead.  Defendants as the
16 administrator and registrant for the website are the only ones who could kill links on
17 clublifestyle.com.  (See LSO's Opposition to Defendants *Ex Parte* at page 7:8-14 "Exhibit 7" to
18 that document)  LSO does not have access to modify the website.  Defendants cannot disprove
19 this fact or the fact that they have always and continue to maintain control over that website that
20 improperly uses LSO's Trademarks.

21 Further, the presence of LSO's trademark on the banner advertisement on *Defendants'*
22 website is an infringement.

23 Defendants are changing the evidence.  Defendants' acts amount to *prima facie* proof
24 that LSO will prevail on its claims for trademark infringement, cyberpiracy, false advertising,
25 unfair business practices, and interference with prospective and actual business/contractual

---

[3] Please see  LSO's Opposition to the *ex parte* request on pages 6:4 to 7:18.

1  relations.  Injunctive relief is therefore necessary to prevent Defendants from continuing to
2  affect evidence in violation of this Court's Order.

## IV.
## DEFENDANTS' DISCUSSION REGARDING DESIRE-RESORTS IS IMMATERIAL

Rather than provide the Court with evidence that LSO does not have a statutory or common law trademark interest in the term Desire-Resorts, the Defendants choose to give an irrelevant description of Desire Resorts- a non-party company.  The facts are that LSO has a protectable trademark interest in the mark of Desire-Resorts, and for many years prior to the events at issue has enjoyed a business relationship with the company Desire Resorts.

Defendants' arguments are weak at best since HUGHES in his declaration claims that RCI has a common law trademark to "Desire-Resorts".  (Dec. of HUGHES ¶ 7)  Defendants, rather than provide proof of their earlier claim, instead attempts to speak about the interests of a third party company.  This is likely done to confuse the issues, basically since Defendants cannot refute LSO's claim to that mark, Defendants want to create the perception that LSO could not have an ownership interest in that mark because a company has a similar name to the mark.  This is not evidence of anything.

The true nature of LSO's ownership of the mark Desire-Resorts and LSO's relationship to Desire-Resorts the company should be obtained from someone with actual knowledge.  To that end please see Declaration of Robert McGinley at paragraph 25, which explains that LSO has the common law trademark for desire-resorts.com; and that Defendants are using a copy of LSO's desire-resorts.com website to improperly cause consumer confusion.

Defendants' incomplete and inaccurate commentary does not aid the Court in determining whether or not LSO's assertion of a trademark interest is valid and instead confuses the issues.  Defendants' discussion of Desire-Resorts should be disregarded.

/ / /
/ / /
/ / /

## V.

## THE TRIP CASH PROGRAM IS OWNED BY LSO AND WAS CONVERTED BY DEFENDANTS

LSO paid in excess of $40,000 for the development of the trip cash program and RCI insisted that the program had to be run on their servers. The Trip Cash program was only returned to LSO in February 2008. (Declaration of Bruce Kinnee) Defendants have not introduced competent evidence actually disproving LSO's ownership interest in the Trip Cash program. HUGHES' Declaration merely demonstrates the blatant falsity of the statement in Defendants' Opposition Memorandum of Points & Authorities, that "Plaintiff cannot claim and does not own any rights to the concept or idea of an affiliate travel program like Plaintiff's Trip Cash program or Right Connections' Exotic Travel Mart program". (Page 10:11-13) HUGHES' Declaration explains that Defendants presented the idea of Trip Cash to Plaintiff, that RCI had the Trip Cash Program created for Plaintiff, and that, Plaintiff's new program was placed on RCI servers and not on LSO's. (Dec. of HUGHES in Opposition page ¶¶ 39 and 40) Defendants' *own* statements establish that LSO owns the Trip Cash program.

## VI.

## LSO WILL SUFFER IRREPARABLE HARM AND DEFENDANTS HAVE FAILED TO REFUTE THIS ACT

Defendants have not refuted that they have received (and are receiving) emails through the hidden code, or have received (and are receiving) hits on their website from links improperly attached to LSO Trademarks. Defendants are receiving business that otherwise would have been obtained or retained by LSO, but for Defendants' infringement and other bad acts.

Further, because Defendants continue to control LSO's clublifestyles website they are losing contact and customer loyalty of its clients. (Dec. of McGinley ¶¶ 3, 23 and 24) Since Defendants have effectively sabotaged the website that bares LSO's Trademarks, LSO's brand reputation is being hurt as members (predictably) blame LSO (the perceived webhost) for the

loss of the once robust website, and the loss of their privacy in the services LSO provided through that website. (Dec. of McGinley ¶ 24) The Lifestyles community interacts with each other through the internet to overcome geographic boundaries and also to benefit from anonymity, consequently LSO's websites are essential to LSO's ability to reach out to those in the community.

Defendants' discussion of LSO's bankruptcy reorganization demonstrates that injunctive relief is necessary to deny Defendants the ability to take advantage of their competitor's current financial state. Defendants ponder "how [LSO] will be able to service and pay of such a massive amount of debt and thereby stay in business". (Defendants' Opposition page 12:5-9) Reorganization is not the same as going out of business. Defendants' continued infringement, misappropriation and other acts is impeding LSO's ability to regain control over its finances. Defendants apparently believe that a bankruptcy filing amounts to permission allowing parties to infringe upon and steal the business of the filing party.

There is no requirement, and Defendants have not cited to any law in support that requires the party to be enjoined cause the enjoining party to seek bankruptcy. (See Defendants' Opposition page 12:7-9) LSO is in bankruptcy and if Defendants are allowed to continue in their conduct, LSO's chances at reorganization will be irreparably harmed.

## VII.
### DEFENDANTS' REQUESTED BOND IS IMPROPER AND SHOULD BE DENIED

The conduct to be prohibited and required will preclude Defendants from infringing upon LSO's materials. The Defendants' primary defense is that they are not infringing on any Trademarks, are not using LSO's client list, are not stealing LSO's client lists, and are not using the allegedly "dead" website clublifestyle.com. If Defendants' "defenses" are true then a bond is not required as Defendants could not be harmed by being precluded from doing acts which they claim they are not engaging in. (See (Schwarzer, Tashima, & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2001) ¶ 13:196 page 13-68 *Doctor's Assocs., Inc.* v. *Stuart* (2nd Cir. 1996) 85 F.3d 975, 985) Moreover, LSO will definitely prevail on its

claim of conversion, and correspondingly based upon the ready accessibility of Defendants' websites using links that are illegally connected to pictures containing LSO's Trademarks, LSO will prevail on the other causes of action as well. Correspondingly, the Court should not require a bond. (*Scherr* v. *Vople* (7th Cir. 1972) 466 F.2d 1027, 1035)

The $200,000 bond request is improper and notably is not based upon ***profits*** anticipated to be lost but instead on "gross sales". Assuming *arguendo* that a bond is awarded, the amount of that bond should only be enough to cover losses that might result on the slight hypothetical chance that the injunction is later found to have been erroneous. (Schwarzer, Tashima, & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2001) ¶ 13:200 page 13-69) While Defendants might be entitled to reimbursement of lost profits, the Defendants fail to explain why they should be entitled to reimbursement of expenses not incurred.

## VIII.

## **CONCLUSION**

With due respect, Plaintiff requests that this Honorable Court issue injunctive relief as requested in the Combined Motion. The Defendants were presented with evidence of their misconduct in the Complaint, the Combined Motion and the Opposition to Defendants' *ex parte* request to continue the hearing, in response Defendants replied that they returned LSO's servers, the subject website is not active (despite contrary evidence), and that a $200k bond is appropriate when Defendants have been in their new business for just a few months. These assertions lack merit. Injunctive relief is appropriate and necessary to preserve evidence and stop Defendants from continuing to harm LSO.

Dated: March 14, 2008          **Murray** & **Sabban, LLP**

By: _/S/ *Paul S. Murray*_____
Paul S. Murray, Esq.
Attorney for Plaintiff LSO, LTD.